*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  December 29, 2016                    107539
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                        Respondent,
        v                                    MEMORANDUM AND ORDER

THOMAS MONTFORD,
                        Appellant.
_____

Calendar Date:  November 17, 2016

Before:  Peters, P.J., Garry, Devine, Mulvey and Aarons, JJ.

_____


        Paul J. Connolly, Delmar, for appellant.

        Robert M. Carney, District Attorney, Schenectady (Tracey A.
Brunecz of counsel), for respondent.

_____


Garry, J.

        Appeal from a judgment of the County Court of Schenectady
County (Murphy III, J.), rendered March 26, 2015, upon a verdict
convicting defendant of the crimes of criminal sale of a
controlled substance in the third degree and criminal possession
of a controlled substance in the third degree (two counts).

        In March 2014, a confidential informant (hereinafter CI)
made a controlled purchase of crack cocaine from defendant in the
City of Schenectady, Schenectady County.  Law enforcement
officers stopped defendant after the transaction and found that
he was carrying a pouch containing a substance later shown to be
heroin and another substance alleged to be marihuana.  Defendant
was charged with criminal sale of a controlled substance in the
third degree, two counts of criminal possession of a controlled

substance in the third degree pertaining respectively to the cocaine and the heroin, and unlawful possession of marihuana. During the subsequent jury trial, defendant's motion to dismiss the marihuana charge was granted. He was convicted of the remaining charges and sentenced to concurrent prison terms of nine years on the criminal sale of a controlled substance conviction and the criminal possession conviction pertaining to cocaine, and to a consecutive nine-year prison term on the criminal possession conviction pertaining to heroin, followed by two years of postrelease supervision on each conviction. Defendant appeals.

Defendant contends that his conviction for criminal possession of a controlled substance in the third degree premised upon the heroin found on his person was against the weight of the evidence and was not supported by legally sufficient evidence, in that the People failed to prove that he had the requisite intent to sell. The legal sufficiency claim is unpreserved, as defendant failed to raise this argument in his trial motion for dismissal (see People v Thiel, 134 AD3d 1237, 1237-1238 [2015], lv denied 27 NY3d 1156 [2016]; People v Junior, 119 AD3d 1228, 1229 [2014], lv denied 24 NY3d 1044 [2014]). However, as part of this Court's weight of the evidence review, we necessarily determine whether all of the elements of the charged crimes were proven beyond a reasonable doubt (see People v Valverde, 122 AD3d 1074, 1075 [2014], lv denied 27 NY3d 970 [2016]).

Taken together, the trial testimony of the CI and several law enforcement officers established that the CI telephoned a man she knew as "Black" — later identified as defendant — and made arrangements to meet him to purchase drugs. The CI was searched before the transaction and given audio transmission equipment and buy money consisting of two $20 bills that the police had photocopied. The CI then met defendant on the street and gave him the buy money in exchange for a quantity of crack cocaine that she described as "two little twenty pieces." Officers monitored the encounter using surveillance cameras, direct observation and the CI's transmission equipment, and followed defendant afterward as he rode away on his bicycle. The CI gave the cocaine to investigators and told them that defendant had taken it out of a black case or pouch in which the CI had seen

other drugs that she believed to be heroin.  Defendant was stopped and searched, and a small black pouch was found on his person.  Inside the pouch were 17 glassine envelopes containing a substance later identified as heroin, as well as multiple packages of a substance alleged to be marihuana. The packets of heroin were packaged into two bundles with black rubber bands in a manner that, according to the testimony of several detectives, was consistent with the typical packaging of heroin for the purpose of sale on the streets in Schenectady.  Also found on defendant's person were a cell phone registered to the number that the CI had called, $209 in cash that included the two $20 bills that the police had photocopied, and a piece of paper containing the name Black and the cell phone's telephone number.

Against his counsel's advice, defendant took the stand and testified that he received a phone call from a woman who asked him to meet her, rode his bicycle to the meeting location and engaged in "personal business" with the woman, after which he was stopped and arrested.  He also testified that people on the streets knew him as Black.  He now argues that his intent to sell the heroin was not proven, as no sale of heroin took place and the quantities of heroin and cash found on his person were too small to support an inference that he intended to sell the heroin rather than use it.  However, it is possible to possess and intend to sell narcotics without actually completing a sale (see People v Mendoza, 300 AD2d 824, 824-825 [2002], lv denied 99 NY2d 617 [2003]).  Here, the jury could infer defendant's intent to sell the heroin from the police testimony that it was packaged in a manner consistent with sale and from the other surrounding circumstances, including defendant's "saleslike conduct" in selling the cocaine (People v Sanchez, 86 NY2d 27, 35 [1995]).  Such conduct also included the fact that the heroin was in the same pouch that contained the cocaine that defendant sold to the CI, the CI's testimony that defendant had previously sold drugs to her on other occasions, and defendant's possession of the piece of paper containing his street name and telephone number, which police testified was consistent with a "business card" advertising his availability as a drug dealer (compare People v McCoy, 59 AD3d 856, 857 [2009]).  There was no evidence that defendant personally used heroin or any other drug, and the relatively small quantities of drugs and cash found in his

possession were consistent with the fact that he was riding his bicycle when he met the CI to carry out the cocaine transaction. Viewing the evidence in a neutral light (see People v Cruz, 131 AD3d 724, 725 [2015], lv denied 26 NY3d 1087 [2015]), we cannot say that the conviction is against the weight of the evidence (see People v Banks, 264 AD2d 667, 667 [1999], lv denied 94 NY2d 819 [1999]).

We agree with defendant, however, that his convictions must be reversed because of the erroneous denial of his challenge for cause to a juror. During voir dire, one of the jurors told County Court that he knew several members of the District Attorney's staff, including an investigator with whom the juror and his wife had been friends for over 30 years, two other individuals who had previously been named by the court as employees of the District Attorney's office, and an Assistant District Attorney in Schenectady County. The juror explained that he had strong connections in law enforcement; he had worked for a town police department in Schenectady County for almost 20 years, was a part-time patrol officer at the time of trial, had also worked as a road deputy in Schenectady County and was "the career fire chief" for a village in Schenectady County. Despite his affiliations with law enforcement, he repeatedly confirmed that he would be fair, would follow his oath, would not communicate with police officers or Assistant District Attorneys and had no concerns about "split obligations" arising from his experience in law enforcement or being able to judge the police work or the People's case fairly.

Defense counsel challenged the juror for cause, noting that the juror was an active member of law enforcement and that the investigator that the juror had identified as a friend was working on defendant's case and had already been present in the courtroom during the trial. The prosecutor confirmed that the investigator was working on the case and that he might appear in the courtroom. County Court denied the challenge on the ground that the juror had stated unequivocally that he would be fair and impartial.

There are circumstances in which a prospective juror's assurances of impartiality are inadequate. A challenge for cause

must be granted when the juror has a relationship with, as pertinent here, counsel for the People that is so close "that it is likely to preclude him [or her] from rendering an impartial verdict" (CPL 270.20 [1] [c]). This is so because "the risk of prejudice arising out of the close relationship . . . [is] so great that recital of an oath of impartiality could not convincingly dispel the taint" (People v Branch, 46 NY2d 645, 651 [1979]; accord People v Hamilton, 127 AD3d 1243, 1246 [2015], lvs denied 25 NY3d 1160, 1164 [2015]; see People v Wlasiuk, 90 AD3d 1405, 1412 [2011]). Factors to be taken into account in determining whether a relationship is sufficiently close to require disqualification include "the frequency, recency or currency of the contact, whether it was direct contact, and the nature of the relationship as personal and/or professional" (People v Greenfield, 112 AD3d 1226, 1228-1229 [2013], lv denied 23 NY3d 1037 [2014]).

The juror's mere status as a law enforcement officer, without more, would not necessarily have required his disqualification, nor would any relationship with a member of the District Attorney's staff that was "little more than a nodding acquaintance" (People v Provenzano, 50 NY2d 420, 425 [1980]; see People v Pickren, 284 AD2d 727, 727-728 [2001], lv denied 96 NY2d 923 [2001]; People v Butts, 140 AD2d 739, 741 [1988]). However, the juror described the investigator as a "friend," and said that their social relationship had endured for more than 30 years and was sufficiently close to include the juror's wife. While the juror did not specifically describe the recency or frequency of his contacts with this investigator, nothing in his description of their relationship suggested any recent lessening in the strength of this longstanding connection. Further, the investigator in question was working on defendant's case, had already appeared in the courtroom by the time the juror was questioned and, according to the prosecutor, might continue to be present during the trial.

"Nothing is more basic to the criminal process than the right of an accused to a trial by an impartial jury" (People v Branch, 46 NY2d at 652). This juror's long-established relationship could have "create[d] the perception that the accused might not receive a fair trial before an impartial finder

of fact" (<u>People v Furey</u>, 18 NY3d 284, 287 [2011]; <u>accord</u> <u>People v Hamilton</u>, 127 AD3d at 1247). As defendant exhausted his peremptory challenges before jury selection was complete, the erroneous denial of his challenge for cause requires reversal and a new trial (<u>see</u> <u>People v Bedard</u>, 132 AD3d 1070, 1071 [2015]; <u>People v Smith</u>, 52 AD3d 847, 847-848 [2008]; <u>People v Clark</u>, 125 AD2d 868, 869-870 [1986], <u>lv denied</u> 69 NY2d 878 [1987]; <u>see also</u> <u>People v Greenfield</u>, 112 AD3d at 1229-1230). This determination renders the remaining challenge to defendant's sentence academic.

Peters, P.J., Devine, Mulvey and Aarons, JJ., concur.

ORDERED that the judgment is reversed, on the law, and matter remitted to the County Court of Schenectady County for a new trial.

ENTER:

Robert D. Mayberger
Clerk of the Court