People v Cross (2019 NY Slip Op 05446)





People v Cross


2019 NY Slip Op 05446


Decided on July 5, 2019


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 5, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: PERADOTTO, J.P., LINDLEY, DEJOSEPH, TROUTMAN, AND WINSLOW, JJ.


251 KA 17-00057

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
LARRY CROSS, DEFENDANT-APPELLANT. 






THE LEGAL AID BUREAU OF BUFFALO, INC., BUFFALO (NICHOLAS P. DIFONZO OF COUNSEL), FOR DEFENDANT-APPELLANT. 
LARRY CROSS, DEFENDANT-APPELLANT PRO SE.
JOHN J. FLYNN, DISTRICT ATTORNEY, BUFFALO (JULIE BENDER FISKE OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Supreme Court, Erie County (Russell P. Buscaglia, A.J.), rendered February 17, 2016. The judgment convicted defendant, upon a jury verdict, of attempted murder in the second degree, assault in the first degree and criminal possession of a weapon in the second degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.
Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of, inter alia, attempted murder in the second degree (Penal Law §§ 110.00, 125.25 [1]), arising from an incident in which he went to the residence of the victim and then shot the victim after he came to the front door. We affirm.
Defendant contends in his main brief that Supreme Court erred in denying his challenge for cause to a first prospective juror and further contends in his pro se supplemental brief that the court erred in denying his challenge for cause to a second prospective juror. Although defendant preserved those contentions for our review (see CPL 270.20 [2]; People v Harris, 19 NY3d 679, 685 [2012]), we conclude that they lack merit.
"A prospective juror may be challenged for cause on several grounds" (People v Furey, 18 NY3d 284, 287 [2011]), including that the prospective juror "bears some . . . relationship to [counsel for the People or for the defendant] of such nature that it is likely to preclude him [or her] from rendering an impartial verdict" (CPL 270.20 [1] [c]; see People v Scott, 16 NY3d 589, 592-593, 595 [2011]; People v Thomas, 166 AD3d 1499, 1501 [4th Dept 2018], lv denied 32 NY3d 1178 [2019]). " [N]ot all relationships, particularly professional ones, between a prospective juror and relevant persons, including counsel for either side, require disqualification for cause as a matter of law' " (Thomas, 166 AD3d at 1501-1502; see Furey, 18 NY3d at 287). "Trial courts are directed to look at myriad factors surrounding the particular relationship in issue, such as the frequency, recency or currency of the contact, whether it was direct contact, and the nature of the relationship as personal and/or professional . . . or merely a nodding acquaintance" (Thomas, 166 AD3d at 1502 [internal quotation marks omitted]; see Furey, 18 NY3d at 287; People v Provenzano, 50 NY2d 420, 425 [1980]; People v Greenfield, 112 AD3d 1226, 1228-1229 [3d Dept 2013], lv denied 23 NY3d 1037 [2014]).
Here, the first prospective juror's mere status as an investigator with a law enforcement agency, without more, did not require her disqualification (see People v Montford, 145 AD3d 1344, 1348 [3d Dept 2016], lv denied 29 NY3d 999 [2017]; Greenfield, 112 AD3d at 1229; People v Pickren, 284 AD2d 727, 727-728 [3d Dept 2001], lv denied 96 NY2d 923 [2001]). Moreover, the first prospective juror had no professional or personal relationship, nor direct [*2]contact, with either of the trial prosecutors; instead, she had merely "heard of" one of the trial prosecutors from her former coworkers (see Pickren, 284 AD2d at 727-728; cf. People v Branch, 46 NY2d 645, 650-651 [1979]; see also People v DeFreitas, 116 AD3d 1078, 1080 [3d Dept 2014], lv denied 24 NY3d 960 [2014]). While the first prospective juror may also have seen defendant and a defense attorney in a courtroom on one prior occasion as part of her employment on a recent unrelated case, any such limited past contact and familiarity with appearance would show no more than a "nodding acquaintance," which does not constitute implied bias requiring her automatic exclusion from jury service (Provenzano, 50 NY2d at 425; see generally Furey, 18 NY3d at 287). In addition, although the first prospective juror had worked with other members of the District Attorney's Office in prosecuting the prior case and acknowledged her close working relationship with that office, the record establishes that the relationship was solely professional and that the single matter upon which she had worked with that office was unrelated to defendant's case (see Greenfield, 112 AD3d at 1228-1229; People v Molano, 70 AD3d 1172, 1174 [3d Dept 2010], lv denied 15 NY3d 776 [2010]; cf. Montford, 145 AD3d at 1347-1348). There is nothing in the record establishing that the first prospective juror was engaged in "current, ongoing investigative work on a pending matter in cooperation with and under the direction of the prosecuting agency" (Greenfield, 112 AD3d at 1229), and defendant's assertion that the first prospective juror would be expected to engage in such work in the future is based on mere speculation (see People v Kennedy, 78 AD3d 1477, 1478 [4th Dept 2010], lv denied 16 NY3d 798 [2011]).
The record also shows "little more than a nodding acquaintance" between the second prospective juror and one of the trial prosecutors (Provenzano, 50 NY2d at 425; see Pickren, 284 AD2d at 728). Moreover, "[n]either [the second prospective juror's] status as a law enforcement officer . . . nor his former, solely professional relationship with the District Attorney's [O]ffice, which was largely remote in time . . . , required his disqualification for cause" (Greenfield, 112 AD3d at 1229; see CPL 270.20 [1] [c]; Scott, 16 NY3d at 595). With respect to actual bias, "[i]t is well settled that a prospective juror whose statements raise a serious doubt regarding the ability to be impartial must be excused unless the [prospective] juror states unequivocally on the record that he or she can be fair and impartial" (People v Campanella, 100 AD3d 1420, 1421 [4th Dept 2012], lv denied 20 NY3d 1060 [2013] [internal quotation marks omitted]). Here, the second prospective juror "never expressed any doubt concerning his ability to be fair and impartial" (id.; see People v Odum, 67 AD3d 1465, 1465 [4th Dept 2009], lv denied 14 NY3d 804 [2010], reconsideration denied 15 NY3d 755 [2010], cert denied 562 US 931 [2010]). In any event, even assuming, arguendo, that the initial statements of the second prospective juror raised a serious doubt regarding his ability to be impartial, we conclude that he ultimately stated unequivocally that he could be fair (see Campanella, 100 AD3d at 1422).
Defendant further contends in his main brief that the evidence is legally insufficient to support the conviction and that the verdict is against the weight of the evidence, primarily based on his challenge to the credibility of the victim regarding the identity of the shooter. We reject those contentions.
Even assuming, arguendo, that defendant's contention regarding the legal sufficiency of the evidence is preserved for our review (cf. People v Hines, 97 NY2d 56, 62 [2001], rearg denied 97 NY2d 678 [2001]), we conclude that his contention lacks merit. "Viewing the evidence in the light most favorable to the People, and giving them the benefit of every reasonable inference" (People v Bay, 67 NY2d 787, 788 [1986]; see People v Delamota, 18 NY3d 107, 113 [2011]), we conclude that the evidence is legally sufficient to support the conviction (see People v Butler, 140 AD3d 1610, 1610-1611 [4th Dept 2016], lv denied 28 NY3d 969 [2016]; People v Kindred, 60 AD3d 1240, 1241 [3d Dept 2009], lv denied 12 NY3d 926 [2009]; see generally People v Bleakley, 69 NY2d 490, 495 [1987]).
Furthermore, viewing the evidence in light of the elements of the crimes as charged to the jury (see People v Danielson, 9 NY3d 342, 349 [2007]), we conclude that the verdict is not against the weight of the evidence (see generally Bleakley, 69 NY2d at 495). "Although defendant [contends] that the testimony of the [victim and the other] eyewitness[ ] who identified him as the shooter should be discredited for various reasons—including [the traumatic nature of the shooting, the delay in reporting defendant's name during the 911 call despite the testimony suggesting that the other eyewitness had done so immediately, and purported overstatements by the victim of his familiarity with defendant and ability to identify him]—the jury was able to [*3]consider each of these issues now raised and chose to credit the identification of defendant as the shooter" (People v Lanier, 130 AD3d 1310, 1311 [3d Dept 2015], lv denied 26 NY3d 1009 [2015]). The issues of credibility and identification, including the weight to be given to any inconsistencies in the testimony of the victim and the other eyewitness, "were properly considered by the jury and there is no basis for disturbing its determinations" (People v Kelley, 46 AD3d 1329, 1330 [4th Dept 2007], lv denied 10 NY3d 813 [2008]; see Lanier, 130 AD3d at 1311; People v Concepcion, 128 AD3d 612, 612 [1st Dept 2015], lv denied 26 NY3d 927 [2015]; People v Moye, 11 AD3d 1027, 1028 [4th Dept 2004], lv denied 3 NY3d 759 [2004], reconsideration denied 4 NY3d 746 [2004]).
Finally, contrary to defendant's contention in his main brief, the sentence is not unduly harsh or severe, and we decline defendant's request to exercise our power to reduce the sentence as a matter of discretion in the interest of justice (see CPL 470.15 [6] [b]).
Entered: July 5, 2019
Mark W. Bennett
Clerk of the Court